UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HOLLIS J. LARSON,                           Case No. 18-cv-2554 (WMW/DTS)

     Petitioner,

                                **REPORT AND RECOMMENDATION**
v.                                                     and
                                      **ORDER**
BRYCE BOGENHOLM, *et al.*,

     Defendants.

---

Hollis Larson, MSOP, 1111 Highway 73, Moose Lake, MN 55767, *Pro Se* Plaintiff

Leah Tabbert, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for the State Defendants

Francine Kuplic, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for the Carlton County Defendants

Daniel Kurtz, League of Minnesota Cities, 145 University Avenue West, St. Paul, MN 55103, for the Moose Lake Defendants

---

Plaintiff Hollis J. Larson asserts several civil rights claims under 42 U.S.C. § 1983, civil rights conspiracy under 42 U.S.C. §§ 1985 and 1986, and supplemental state law claims against 19 state, county, and municipal defendants alleging unlawful arrest and prosecution for assault. His claims arise out of an incident at the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota, in which an MSOP employee was injured. A jury acquitted him of the assault charge. The Defendants (State Defendants[1], Carlton County Defendants[2], and City

---

[1] Robert Macauley, Shaun Floerke, Nathan Madsen, Benjamin Zuk, Becky Benson, Jensina Rosen, Kyle Randa, Scott Giannini, Bryan Carman, Anthony Herring, Cathy Canilla, and Joseph Marczak. [Docket No. 62 at 2].
[2] Jesse Berglund, Benjamin Ranallo, Jeffrey Boucher, and Carlton County. [Docket No. 62 at 2].

of Moose Lake Defendants[3]) moved to dismiss all claims, and Larson moved to strike statements from the answers of the Moose Lake Defendants and Carlton County Defendants. For the reasons stated below, the Court recommends that Defendants' motions be granted, and the Court denies Larson's motions to strike.

### FINDINGS OF FACT

### I.    Facts

Larson is a civilly committed person who resides at MSOP. Compl. Sec. II ¶ 25, Docket No. 1. On May 15, 2017,[4] while MSOP personnel were moving Larson from one cell to another, an incident occurred that resulted in an injury to Nathan Madsen, one of three MSOP security counselors who were moving Larson to his new cell. *Id.* ¶ 1-2. The other two employees are Benjamin Zuk and Scott Giannini. *Id.* ¶ 2. Larson alleges that after being locked into the second cell he fell down, which caused the chain connected to his handcuffs to be pulled [through the cuff port in the door] through Madsen's hands, resulting in a cut to Madsen's little finger. *Id.* ¶ 3. Madsen, Zuk, and Giannini reported the event as an assault on Madsen. *Id.* ¶¶ 4, 7. Larson alleges that surveillance video shows only the hallway in which Madsen, Zuk, and Giannini were standing, does not show the inside of the cell where he was located, and shows they were not looking into the small window in the cell door. *Id.* ¶¶ 9-10. He alleges "there was no footage of plaintiff committing assault." *Id.* ¶ 65. Becky Benson, MSOP OSI investigator, conducted an investigation and wrote an Investigation Report. *Id.* ¶ 11. Based on this report, Bryce Bogenholm, the Chief of Police in Moose Lake, initiated a criminal complaint in Carlton County

---

[3] Bryce Bogenholm, Jason Syrett, and City of Moose Lake.  [Docket No. 62 at 2].
[4] Other records in the case state the incident occurred on May 16, not 15. *See* Carlton County Complaint, Docket No. 24-1.

District Court charging Larson with assault on Madsen pursuant to Minn. Stat. § 609.2231, subd. 3a(b)(1) (fourth degree assault on secure treatment facility personnel inflicting demonstrable bodily harm). *Id.* ¶ 15; Criminal Complaint, Tabbert Aff. Ex. A, Docket No. 24-1. Jesse Berglund, an Assistant Carlton County Attorney, approved the complaint, which was signed by both Bogenholm and Berglund. *Compl. Sec. II* ¶¶ 17-19. Carlton County District Court Judge Robert Macauley found probable cause for the assault charge and issued a detention order on May 19, 2017. *Id.* ¶ 22.

At a bail hearing on May 19, 2017, Larson sought to be released on his own recognizance, meaning back to MSOP, on the grounds that he already resided in a secure facility and his appearance for court proceedings was assured, but his request was denied. *Id.* ¶¶ 25-27. Jensina Rosen, a State Program Administrative Supervisor, allegedly told Berglund, via email or telephone call, that Larson was too dangerous to return to MSOP. *Id.* ¶ 26. Larson posted bond on September 20, 2017, then a couple of hours later Carlton County District Court Judge Shaun Floerke released him on his own recognizance and returned his bail money. *Id.* ¶¶ 28-31. On March 23, 2018 Judge Floerke revoked Larson's recognizance release and ordered that he be held in the Carlton County jail for the duration of his trial on the assault charge. *Id.* ¶ 32. Standard practice for MSOP residents out on bail during trial in Carlton County is to transport them back and forth from Moose Lake each day of the trial. *Id.* ¶ 33. Larson believes that at some point Judge Floerke rescinded his order to detain Larson at the Carlton County Jail during trial. *Id.* ¶ 35.

Larson alleges that Police Chief Bogenholm and prosecutors Berglund, Ranallo, and Boucher possessed the video, should have done further investigation, and knew or should have known there was insufficient evidence to proceed with an assault charge against him because

3

"Madsen's injury could as well be explained innocently." *Id.* ¶ 36-40, 44. He alleges Defendants maintained the prosecution against him "to avoid civil liability and in retaliation for" his federal civil rights lawsuit regarding the conditions of confinement at the Carlton County Jail. *Id.* ¶ 41, 45. He identified the lawsuit as *Larson v. Lake*, District of Minnesota Case No. 17-cv-3551. *Id.* ¶ 41. That lawsuit was filed on July 24, 2017.[5]

Larson does not know when Judges Macauley or Floerke viewed the video. *Id.* ¶ 42. On July 18, 2017 he filed a motion to dismiss the criminal complaint, arguing that the video and his in-court statements that it was an accident rather than intentional established a lack of probable cause. *Id.* ¶ 43-44. Judge Macauley recused himself from the criminal case on July 25, 2017. Tabbert Aff. Ex. D (recusal order), Docket No. 24-1 at 14. Larson states '[i]t is plaintiff's belief that there is some type of 'agreement' between defendants Berglund, Ranallo, Boucher, and possibly other Carlton County actors and defendants Benson, Rosen, and other MSOP employees in which they 'railroad' MSOP clients into criminal charges and 'rubber-stamp' all evidentiary and procedural matters to ensure that MSOP clients are criminally charged and then coerced into pleading guilty rather than risking a conviction and return to prison, where life is *very* difficult for them." Compl. Sec. II ¶ 46. He alleges "Berglund, Ranallo, Boucher, and possibly Benson, Rosen, etc., met with each other and discussed plaintiff's criminal case." *Id.* ¶ 47.

A jury acquitted Larson of assault on March 28, 2018. *Id.* ¶ 48; Tabbert Aff. Ex. I (verdict form), Docket No. 24-1 at 38. He alleges Madsen, Zuk, Benson, Randa, Giannini, Carman,

---

[5] The Court takes judicial notice of the public docket and court filings in that lawsuit. *See* Fed. R. Evid. 201(b) (judicial notice); *Zimmerman v. Bellows*, 988 F. Supp. 2d 1026, 1029 n.1 (D. Minn. 2013) (judicial notice of court docket).

Herring, Canilla, and Marczak provided false testimony that contradicted the incident reports. Compl. Sec. II ¶ 49. He contends these nine Defendants "were either 'coached,' or even coerced, to make that false testimony by Defendants Berglund, Ranallo, and Boucher and/or met among themselves prior to trial and agreed to testify in that manner." *Id.* ¶ 50.

The State Defendants submitted several documents in the public record that Larson referred to in his complaint or are embraced by the complaint, including the Carlton County criminal complaint for assault; not guilty verdict form; Orders by Judge Macauley and Judge Floerke regarding matters related to the criminal proceedings, such as detention, release, bail, and probable cause; Judge Macauley's recusal form; notice of case reassignment to Judge Floerke; and Larson's motion to remove Judge Floerke and the Order denying his motion. Tabbert Aff. Exs. A through I, Docket No. 24-1.

## II.     Larson's Claims

Larson's complaint asserts 15 claims identified by letter as Claims A through O. Compl. Sec. II ¶¶ 52-153. He states that all Defendants are sued in their individual and official capacities. *Id.* Sec. I ¶¶ 1-19. Claims A through L (except for C) are Larson's federal claims, and Claims M, N, and O are his state law claims (false arrest and detention, intentional infliction of emotional distress, negligence). Claim C is not a claim but rather discusses Larson's assertion that qualified immunity does not apply to this case. *See id.* ¶¶ 70-75.

Larson requests injunctive relief ordering all Defendants to refrain from similar harmful conduct in the future against him and others similarly situated. *Id.* ¶¶ 151-153. He seeks a declaratory judgment delineating the wrongs he believes he suffered and setting a permanent record of his account of the facts. *Id.* at 31-32. He also seeks compensatory and punitive damages from each Defendant in his or her individual capacity. *Id.* at 32-33.

### III.    The Pending Motions

Defendants filed three dispositive motions, grouped as follows: The State Defendants (state district court judges Macauley and Floerke, as well as MSOP employees Madsen, Zuk, Randa, Giannini, Carman, Herring, Marczak, Benson, Canilla, and Rosen) filed a Motion to Dismiss [Docket No. 20]. The Moose Lake Defendants (Police Chief Bogenholm, Officer Syrett, and the City of Moose Lake) brought a Motion for Judgment on the Pleadings [Docket No. 56]. The Carlton County Defendants (County Attorneys Berglund, Ranallo, and Boucher, as well as Carlton County) filed a Motion to Dismiss on the Pleadings and/or Summary Judgment [Docket No. 52].

Larson has filed two Motions to Strike statements from the Joint Answer of the Carlton County Defendants [Docket No. 43] and the Joint Answer of the Moose Lake Defendants [Docket No. 36].

## CONCLUSIONS OF LAW

### I.    Jurisdiction

All three groups of Defendants seek dismissal of Larson's federal claims under Rule 12(b)(1) for lack of subject matter jurisdiction on the ground that they are barred under the *Rooker-Feldman*[6] doctrine. The Court disagrees.

There are four requirements for application of the *Rooker-Feldman* doctrine: (1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district

---

[6] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).

6

court proceedings commenced. *Christ's Household of Faith v. Ramsey County,* 618 F.Supp.2d 1040, 1044 (D. Minn. 2009) (citing *Skit Intern., Ltd. v. DAC Techs. of Arkansas, Inc.,* 487 F.3d 1154, 1156-57 (8th Cir. 2007)).

*Rooker-Feldman* is a "narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In *Exxon* the Supreme Court discussed the limited scope of the doctrine:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

544 U.S. at 284.

Larson is not seeking relief from a state court judgment. Indeed, a jury acquitted him, and thus he is not a "state-court loser." Rather, the legal wrongs of which he complains are a variety of allegedly unconstitutional actions by Defendants in commencing and continuing his assault prosecution, including making false statements and giving false testimony, conspiring against him to deprive him of equal protection of the laws, and retaliating against him for filing a federal civil rights lawsuit. *See Session v. Rodriquez,* 370 Fed. App'x 189, 191-92 (2d Cir. 2010) (*Rooker-Feldman* inapplicable where plaintiff "did not invite district court review and rejection of the state court probable cause determination; rather, he invited district court scrutiny of the actions allegedly undertaken . . . in falsely procuring that determination); *cf. Skit*, 487 F.3d at 1157 ("As in *Rooker,* the alleged injury for which [plaintiff] seeks redress here stems directly from the state court judgment itself rather than from some separate injury caused by

the defendant."). While other doctrines may apply to deny relief to Larson on his claims, *Rooker-Feldman* does not deprive the Court of jurisdiction over this action.

## II.   Standard of Review

The State Defendants moved for dismissal under Rule 12(b)(6) and the Carlton County and Moose Lake Defendants moved for judgment on the pleadings under Rule 12(c). As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d 1047, 1056 (8th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although a *pro se* complaint is liberally construed, it must still contain specific facts sufficient to support its legal conclusions. *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981). Thus, while a court accords deference to *pro se* pleadings, it will not supply facts that are not alleged that might support the plaintiff's claim. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). In determining whether a plaintiff has stated a plausible claim, the Court considers only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. *Cox v. Mortgage Elect. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012); *see also Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading).

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed" but "early enough not to delay trial." When considering a motion for judgment on the pleadings, the Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party, but does not accept conclusory allegations of law. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002). "Judgment on the pleadings is appropriate if there is no material issue of fact to be resolved and the moving party is entitled to judgment as a matter of law." *Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.*, 715 F.3d 695, 697 (8th Cir. 2013). As with a Rule 12(b)(6) motion, when deciding a Rule 12(c) motion, a court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

Larson contends that Defendants' Rule 12 motions cannot be granted because the Court already determined that his complaint states cognizable claims when it allowed his lawsuit to proceed at the outset of the case. Larson Br. 1, Docket No. 33. Larson is incorrect. Allowing his case to go forward at that initial stage (after granting his *in forma pauperis* (IFP) application) has no bearing whatsoever on Defendants' ability to bring motions to dismiss his complaint under Rule 12.

Larson also asserts that the Moose Lake Defendants' Rule 12(c) motion for judgment on the pleadings should be construed as a Rule 56 motion for summary judgment because they attached two exhibits. Larson Br. 1, Docket No. 69. However, those exhibits consist of two unpublished court decisions that are publicly available on Westlaw, one of which is the state court opinion that denied Larson's appeal of his order of civil commitment. Kurtz Aff. Exs. A, B,

Docket Nos. 59-1, 59-2. These public records do not convert the motion into a summary judgment motion. The opinion regarding Larson's civil commitment was submitted to support the Moose Lake Defendants' factual background section of their brief, and this Court did not use or rely on any statement in that opinion when considering the parties' motions.

Finally, Larson purports to claim that public documents in the court file of his Carlton County District Court assault prosecution are "not authentic." Larson Br. 3, Docket No. 69. However, it is clear that he is not challenging the authenticity of these public records; rather, he disagrees with some of their content.

## III.    Moose Lake Defendants' Motion for Judgment on the Pleadings

### A.    Bogenholm and Syrett

Larson asserts § 1983 claims against Police Chief Bogenholm for false arrest and detention, (Claims A, D, G), retaliation (Claim E), malicious prosecution (Claim H), and failure to properly hire and train (Claims I, J); § 1983 claims against Officer Syrett for false arrest and detention (Claims A, D, F, G), retaliation (Claim E), and malicious prosecution (Claim H); and §§ 1985 and 1986 claims against Bogenholm and Syrett alleging they and all the other Defendants engaged in a conspiracy (Claims K, L). He also alleges state law claims M, N, and O.

#### 1.    Qualified Immunity

Qualified immunity protects government officials from liability for civil damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Small v. McCrystal,* 708 F.3d 997, 1003 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Police officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they

have probable cause to do so, provided the mistake is objectively reasonable. *Id.* at 1006. The inquiry therefore is whether the officers had "arguable probable cause." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense. *Small,* 708 F.3d at 1006. Exculpatory evidence is relevant to whether an officer has probable cause. *Amrine.* 522 F.3d at 832. Officers are not required to conduct a "mini-trial" before arrest, but probable cause does not exist when a "minimal further investigation" would have exonerated the suspect. *Id.*

It is clear in Larson's complaint that his actions caused an injury to MSOP Security Counselor Madsen's little finger when the chain attached to Larson's handcuffs was pulled through Madsen's hands. *See* Compl. Sec. II ¶ 3.[7] What was been disputed since then is Larson's intent during the incident, and what Defendants knew or should have known about the intentional or accidental nature of the incident – whether the chain was pulled accidentally when Larson fell down inside the closed cell, or whether he intentionally yanked on it. The essence of Larson's claims is that the three MSOP security counselors who were present at the time of the incident (Madsen, Zuk, and Giannini) "falsely reported the accident as an 'assault on staff'" [*id.* ¶ 4] and thereafter all the identified State/MSOP employees, the Moose Lake police, the Carlton County prosecutors, and the two judges initiated the criminal assault charge (with a false affidavit and false criminal complaint, *see id.* ¶¶ 80, 83, 134) and

---

[7] In his brief, Larson argues that he "in no way, shape, or form, admitted or admits to causing Defendant Madsen's injury," but there is no other way to read his allegation in paragraph 3 that his actions "caused" the chain to be pulled through Madsen's hands which "result[ed]" in the injury. *See* Larson Br. 16, Docket No. 33.

maintained the prosecution (with false testimony) despite knowing he lacked the intent that is a required element of assault.

Larson asserts that MSOP Security Counselors Madsen, Zuk, and Giannini falsely reported an "assault" to MSOP Investigator Benson; Benson investigated and prepared a report that she provided to Police Chief Bogenholm; based on Benson's report, Bogenholm filed a criminal assault complaint in Carlton County District Court; and Officer Syrett arrested Larson. His complaint does not say what specifically was untrue in the security counselors' reports of the incident except the characterization of the incident as an assault, i.e., intentional rather than accidental. Larson's key contention is that Bogenholm and Syrett (and other Defendants) ignored the surveillance video he calls "exculpatory" [*id.* ¶¶ 40, 65, 67, 71, 74, 91]. However, the allegations in Larson's complaint indicate that the video would not shed light on, much less resolve, the disputed fact issue of intent because the video did not show the inside of the cell where he was located.

Larson alleges "there was no footage of plaintiff committing assault" [*id.* ¶ 65]; however, there was likewise no video of him falling down, accidentally or otherwise, because there was no video at all inside the cell, according to his complaint. It states that the video "show[s] only the hallway," does "not show what was happening inside of the cell in which plaintiff was detained," and shows "Zuk, Madsen, and Giannini were not looking into the small window in the door of the cell" [*id.* ¶¶ 9-10]. He asserts that the video was sufficient to show that "Madsen's injury could as well be explained innocently" [*id.* ¶ 36]. Thus, even accepting as true the factual allegations in his complaint, the video alone would not establish whether he in fact fell down, much less whether any fall or any pulling of the chain was done intentionally. The video is not in the record before the Court at this pleading stage but, based on Larson's description, it is

not "exculpatory" because it does not capture the part of the incident that occurred inside the cell. *Cf. Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (stating, in summary judgment context, that court should view facts in the light depicted by video that captured the events when video establishes there is no genuine issue of material fact); *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (same).

Apart from the video, Larson does not plead any other facts to show that Bogenholm and Syrett had any reason to know of any allegedly false information in the criminal complaint. Even assuming his factual allegations are true and giving him the benefit of all reasonable inferences, it was objectively reasonable for Bogenholm to rely on the information in Benson's report in signing the criminal assault complaint and for Syrett to arrest Larson. Therefore, they are protected by qualified immunity from Larson's § 1983 claims for false arrest and detention.

### 2.    First Amendment Retaliation

Larson alleges a § 1983 First Amendment retaliation claim against Bogenholm and Syrett as well as Carlton County, the three prosecutors, and the two judges. Compl. Sec. II ¶¶ 86-93 (Claim E). He contends they initiated and maintained the assault prosecution in retaliation for a federal civil rights lawsuit he filed, which he identified as *Larson v. Lake,* District of Minnesota Case No. 17-cv-3551, regarding the conditions at the Carlton County Jail. *Id.* ¶¶ 34, 41, 45, 88, 91-92.

To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege he engaged in a protected activity, the defendant responded with an adverse action that would "chill a person of ordinary firmness" from continuing that activity, and the plaintiff's protected activity motivated the defendant's adverse action such that the defendant would not have taken the action but for the retaliatory motive. *Beaulieu v. Ludeman,* 690 F.3d 1017, 1025

(8th Cir. 2012). The public docket of the lawsuit identified by Larson shows that it was filed on July 24, 2017, over two months after the incident, the criminal assault complaint, and his arrest in May 2017 [Compl. Sec. II ¶¶ 1, 18-19, 22-25]. Larson does not and cannot state any plausible claim that the criminal complaint signed by Bogenholm and the arrest made by Syrett were motivated by retaliation for a lawsuit that Larson did not file until two months later. Therefore, the Court recommends that the retaliation claim against them be dismissed.

### 3.    Conspiracy

Larson alleges conspiracy under §§ 1985(2)[8] and (3)[9] (Claim K) and 1986 (Claim L) against all 19 (or 17 individual) Defendants, contending they acted with the purpose of depriving him of equal protection of the laws. Compl. at 1-2 and ¶¶ 131-38. To satisfy the "equal protection" component of his § 1985(2) and (3) claims, "a pleading must allege that the motivating force behind the conspiracy was discrimination on the basis of a suspect classification or characteristic." *Larson v. Jesson*, Case No. 11-cv-2247, 2018 WL 3352926, at

---

[8] He alleges Defendants violated the following clause in § 1985(2) ("Obstructing justice; intimidating party, witness, or juror"):

> [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

Compl. at 1.

[9] He invokes the following portion of § 1985(3) ("Depriving persons of rights or privileges"):

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State of Territory the equal protection of the laws.

Compl. at 1-2.

*3 (D. Minn. July 9, 2018) (citing *Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996)).

Larson's complaint does not plead any particular protected class of which he is a member that forms the basis of his equal protection argument. However, in his responsive brief to the State Defendants' motion to dismiss he argues that he is "a member of a suspect class(es) that is/are routinely subjected to invidiously discriminatory animus – white, heterosexual, male, 'civilly committed' sex offenders." Larson Br. 19, Docket No. 33. However, he makes no allegations that civilly committed sex offenders who are non-white, non-heterosexual, and/or non-male are treated differently based on their race, gender, or sexual orientation. His argument is that "sex offenders" comprise the suspect class: "Sex offenders, including those that are 'civilly' committed, are now clearly being (and have been historically subjected to discrimination." *Id.*

Larson's argument was considered and rejected by District Judge Paul Magnuson in July 2018 in a different lawsuit brought by Larson, the above-cited case of *Larson v. Jesson.* The Court agrees with Judge Magnuson's analysis in that case:

> Larson argues that sex offenders are a suspect class for purposes of § 1985 because they are subject to discrimination. But merely because individuals share a characteristic and may be subject to differential treatment on the basis of that characteristic does not mean that this differential treatment violates their equal protection rights. "The Equal Protection Clause does not mandate identical treatment of different categories of persons." *Plyler v. Doe*, 457 U.S. 202, 243 (1982). Only "irrational classification[s]" run afoul of the Equal Protection Clause. *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 532 (1973). Thus, the Supreme Court has limited the types of classifications that are subject to protection under the Clause to those that share "an immutable characteristic determined solely by the accident of birth," *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973), or that have been subject to a "history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). Classifications that are subject to protection under the Clause are limited to those such as race, alienage, national origin,

religion, and gender; these classes share "some immutable characteristic beyond their control" and "require special protection by the courts because of vast discrimination . . . or their political powerlessness." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1018 (8th Cir. 2012). No case has held that sex offenders constitute a suspect classification to which the Equal Protection Clause applies, and in fact courts have held the opposite. *See, e.g., United States v. Lafferty*, 608 F.Supp.2d 1131, 1144 (D.S.D. 2009) ("Sex offenders are not a suspect or quasi-suspect class."). And "[t]he Supreme Court has rejected the notion that a classification is suspect when 'entry into th[e] class . . . is the product of voluntary action.'" *United States v. Coleman,* 166 F.3d 428, 431 (2d Cir. 1999) (alteration in original) (quoting *Plyler*, 457 U.S. at 219 n.19). Larson's claims under § 1985(2) and (3) fail as a matter of law.

2018 WL 3352926, at 3.

Because Larson has not pleaded a suspect class or characteristic that satisfies the equal protection component of his claim, the Court recommends that his conspiracy claims under § 1985(2) and (3) be dismissed. Given this recommendation, the Court likewise recommends dismissal of his § 1986 claims, which depend on the existence of a valid § 1985 claim. *See Gatlin v. Green,* 362 F.3d 1089, 1095 (8th Cir. 2004) (§ 1986 claim must be predicated on a valid § 1985 claim).

### 4.    Malicious Prosecution

Larson also brings a § 1983 claim against Bogenholm and Syrett for malicious prosecution. However, § 1983 provides a remedy only for violations of rights secured by federal statutes or the Constitution. *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972, 977 (8th Cir. 1993). An action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury. *Id.* Because the Court finds that the conduct of Bogenholm and Syrett did not violate any provision of the Constitution or a federal statute, Larson's claim for malicious prosecution should be dismissed.

### 5.    Failure to Screen, Hire, and Train

Finally, Larson brings a § 1983 claim alleging that Bogenholm, along with the City of Moose Lake, failed to properly screen and hire Syrett [Compl. Sec. II ¶¶ 112-17] and train employees [*id.* ¶¶ 125-29] (Claims I, J). As discussed below, Larson's claims against the City of Moose Lake fail to state a *Monell* claim because they offer only conclusory assertions that a policy or custom existed. His complaint identifies Bogenholm as the Chief of Police and asserts that he is a policymaker [Compl. Sec. I ¶ 1, Sec. II ¶¶ 65, 68], but does not identify any policy or allege that Bogenholm personally took any action that violated Larson's rights (other than his actions regarding the criminal complaint for which he is protected by qualified immunity). *See Iqbal,* 556 U.S. at 676 (because vicarious liability does not apply to § 1983 lawsuits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution). Larson offers only conclusory allegations that Bogenholm, along with the City of Moose Lake, failed to adequately screen, hire, and train, which is insufficient to state a claim. Accordingly, the Court recommends dismissal of these claims against Bogenholm.

### B.    City of Moose Lake

Larson asserts § 1983 claims against the City of Moose Lake alleging municipal liability for false arrest and detention (Claims A, B, G) and failure to properly screen, hire, and train (Claims I, J), and §§ 1985 and 1986 claims alleging the city and all the other Defendants engaged in a conspiracy (Claims K, L). He also alleges state law claims M, N, and O.

A municipality may be held liable under § 1983 for a constitutional violation that resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citing

*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) and *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). The plaintiff must establish causation, i.e., that the policy, custom, or failure to train was the "moving force" behind the constitutional violation. *City of Canton*, 489 U.S. at 389-91; *Monell*, 436 U.S. at 691. A municipality cannot be held liable on a *respondeat superior* theory for the actions of an individual employee. *Monell*, 436 U.S. at 691*.*

While a plaintiff need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss," *Crumpley–Patterson v. Trinity Lutheran Hosp*., 388 F.3d 588, 591 (8th Cir. 2004), he must allege facts that would support an inference that the conduct complained of resulted from an unconstitutional policy or custom. *Doe ex rel. Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Generally, an isolated incident of misconduct cannot as a matter of law establish a municipal policy or custom creating liability under § 1983. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

A failure to train may lead to liability if it amounts to deliberate indifference to the rights of others. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton,* 489 U.S. at 389. Allegations that the training of a particular official was unsatisfactory, that a training program was occasionally negligently administered, or that an injury could have been avoided by better or more training are an insufficient basis for liability. *Id.* at 390-91. But a municipality may be liable if it had notice of prior misbehavior by its employees and failed to take remedial steps amounting to deliberate indifference to the offensive acts. *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985).

18

Larson's complaint fails to state a claim against the City of Moose Lake. It merely states the elements of a cause of action [Compl. Sec. II ¶ 63], recites factual allegations regarding the incident, arrest, and prosecution for assault [*id.* ¶¶ 65-67], and makes conclusory statements that the actions of various Defendants constitute or reflect "customs, practices, policies, and decisions of [the] City of Moose Lake" [*id.* ¶¶ 66, 68]. Larson has not identified any policy or custom, nor has he alleged any facts that would support an inference that a policy or custom existed, that was the moving force behind his arrest and prosecution. He has not pleaded any facts that the City of Moose Lake had notice of any pattern of its employees committing unconstitutional acts, or had any reason to believe any training was inadequate or evidenced "deliberate indifference" to the rights of others such that it would likely lead to constitutional violations. Accordingly, the Court recommends that Larson's federal claims against the City of Moose Lake be dismissed.

## IV.    Carlton County Defendants' Motion to Dismiss on the Pleadings and/or Summary Judgment

### A.    Berglund, Ranallo, and Boucher

Larson asserts § 1983 claims against the three Assistant Carlton County Attorneys alleging retaliation, false imprisonment, and malicious prosecution (Claims E, G, H) and §§ 1985 and 1986 claims alleging they and all the other Defendants engaged in a conspiracy (Claims K, L). He also alleges state law claims M, N, and O.

Prosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and presenting the State's case insofar as that conduct is intimately associated with the judicial phase of the criminal process. *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). This immunity extends to actions preliminary to the initiation of a prosecution and actions apart from the courtroom, but not to

administrative duties and those investigatory functions that do not relate to the initiation of a prosecution or judicial proceedings. *Woodworth v. Hulshof,* 891 F.3d 1083, 1089 (8th Cir. 2018) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 273-74 (1993)). A prosecutor is immune from suit even if he or she knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence. *Id.* Prosecutorial immunity extends to claims of civil conspiracy when the prosecutor's alleged participation in the conspiracy consists of otherwise immune acts. *Id.*

Berglund, Ranallo, and Boucher are entitled to absolute prosecutorial immunity because Larson's factual allegations against them fall within the scope of their prosecutorial duties and are "intimately associated with the judicial phase of the criminal process": signing the criminal complaint, discussing the case, watching the video, continuing the prosecution rather than dropping the charge, and presenting testimony at trial [Compl. Sec. II ¶¶ 21, 36-41, 44, 47, 50, 74, 91-92, 107, 109, 132-34, 137]. The complaint itself acknowledges that they were acting in the prosecutorial capacity: "Defendants . . . Berglund, Ranallo, Boucher, . . . in the course of their respective duties relating to the prosecution of plaintiff, either singly or in groups, took whatever measures were necessary to bring plaintiff to trial and/or to coerce him to plead guilty . . . " [*id.* ¶ 134]. Thus, the Court recommends dismissal of all federal claims against them based on absolute prosecutorial immunity.

### B.    Carlton County

Larson asserts § 1983 claims against Carlton County for false arrest and detention and malicious prosecution (Claims A, D, G), retaliation (Claim E), malicious prosecution (Claim H), and failure to properly hire, train, and supervise (Claims I, J). He asserts §§ 1985 and 1986

claims alleging they and all the other Defendants engaged in a conspiracy (Claims K, L). He also alleges state law claims M, N, and O.

Larson fails to state a cognizable claim against Carlton County based on the same reasoning discussed above with respect to the City of Moose Lake. He has not identified any policy or custom, or alleged any facts that would support an inference that a policy or custom existed, that was the moving force behind his prosecution for assault in Carlton County District Court. He has made only conclusory assertions that a "policy, custom, and practice" existed in Carlton County [Compl. Sec. II ¶¶ 84, 98, 119, 125]. Larson has not pleaded any facts to indicate that Carlton County had any reason to believe any training was inadequate and would likely lead to constitutional violations.

Larson offers only speculation that there may be a pattern of conduct by Carlton County employees and others to "railroad" MSOP clients into criminal charges: "It is plaintiff's belief that there is some type of 'agreement' between defendants Berglund, Ranallo, Boucher, and possibly other Carlton County actors and defendants Benson, Rosen, and other MSOP employees in which they 'railroad' MSOP clients into criminal charges and 'rubber-stamp' all evidentiary and procedural matters to ensure that MSOP clients are criminally charged and then coerced into pleading guilty rather than risking a conviction and return to prison, where life is *very* difficult for them." *Id.* ¶ 46. But his assertions are generalities unsupported by specific factual details to show any custom existed. His conjecture falls short of stating a plausible claim that Carlton County had notice that its employees were committing any unconstitutional acts or that any custom was the moving force behind the assault prosecution.

Accordingly, the Court recommends that all federal claims against Carlton County be dismissed.

**V.    State Defendants' Motion to Dismiss**

The State Defendants are MSOP Security Counselors Madsen, Zuk, Randa, Giannini, Carman, Herring, and Marczak; MSOP OSI Investigator Benson; MSOP Group Supervisor Canilla; State Administrative Advisor Rosen; and District Court Judges Macauley and Floerke.

**A.    All State Defendants in their Official Capacities**

When a state official is sued in his or her official capacity, the claim is treated as a claim against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Eleventh Amendment provides a state with immunity from suit in federal court by citizens of other states and by its own citizens. *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004). A state agency or official may invoke the State's Eleventh Amendment immunity if it will "protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" *Hadley v. North Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 n.34 (1984)). Minnesota has not waived its immunity from suit in federal court for § 1983 damages claims, and Congress did not abrogate that immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979).

However, an official is not immune from an official-capacity lawsuit that seeks prospective injunctive relief. *Graham,* 473 U.S. at 167 n.14. Relief is "prospective" if it alleges an ongoing violation of federal law. *Verizon Md., Inc. v. Public Service Comm'n of Md.,* 535 U.S. 635, 645 (2002). The Court finds that Larson has not pleaded a cognizable official-capacity claim for prospective injunctive relief. His claims involve a particular incident, prosecution, and trial that occurred in 2017 and 2018, and injunctive relief would not remedy the violations he alleged regarding those events. Moreover, the only references in his complaint to arguably

ongoing violations by State Defendants are not factual allegations but mere conclusory assertions and speculation. *See* Compl. Sec. II ¶¶ 46, 152-53.

Accordingly, the Court recommends that all of Larson's official-capacity claims be dismissed.

**B.    Benson**

Larson asserts § 1983 claims against Benson for false arrest and detention and malicious prosecution (Claims A, D) and §§ 1985 and 1986 claims alleging she and all the other Defendants engaged in a conspiracy (Claims K, L). He also alleges state law claims M, N, and O.

The Court finds that Benson is protected by qualified immunity against Larson's claim for false arrest and prosecution. Benson is an MSOP investigator. Larson alleges she received reports of the incident from Security Counselors Madsen, Zuk, and Giannini; investigated the incident; talked to them; watched the video; prepared an investigation report; and submitted the report to Police Chief Bogenholm. Compl. Sec. II ¶¶ 11-13. Based on the report, Bogenholm filed a criminal complaint in Carlton County District Court charging Larson with assault. *Id.* ¶ 15.

Larson alleges that, having viewed the video, Benson must have known there was no probable cause to believe he assaulted Madsen. *Id.* ¶ 14. However, Benson is an MSOP employee, not a Moose Lake police officer or Carlton County prosecutor, and according to Larson's own factual allegations, she did not sign the criminal complaint nor would she have had the authority to do so. Moreover, as discussed above with respect to Bogenholm and Syrett, the video is not "exculpatory," does not shed light on whether the incident was accidental or intentional because it does not show the inside of the cell, and provided no basis for Benson

to believe that the information reported by the three security counselors was so untrustworthy that a reasonable person would not have relied on it. Accordingly, Benson is protected by qualified immunity from Larson's § 1983 claims against her.

Larson also asserts claims under §§ 1985 and 1986 alleging Benson and all the other Defendants engaged in a conspiracy to deprive him of equal protection of the laws. These claims fail for the reasons discussed above with respect to the Moose Lake Defendants.

The Court recommends that all federal claims against Benson be dismissed.

### C.    Judges Macauley and Floerke

Larson asserts § 1983 claims against Judges Macauley and Floerke for retaliation, false imprisonment, and malicious prosecution (Claims E, G, H) and §§ 1985 and 1986 claims alleging they and all the other Defendants engaged in a conspiracy (Claims K, L). He also alleges state law claims M, N, and O.

A judge is immune from suit, including suits brought under § 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances. *Schottel v. Young,* 687 F.3d 370, 373 (8th Cir. 2012). First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.* (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity. *Id.* The scope of a judge's jurisdiction is construed broadly. *Id.* "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978)). Judicial immunity

extends to federal conspiracy claims. *See Woodworth v. Hulshof,* 891 F.3d 1083, 1091-92 (8th Cir. 2018).

Judges Macauley and Floerke are entitled to judicial immunity because their actions were within the scope of their duties in presiding over criminal pre-trial and trial proceedings in a court of general jurisdiction. Larson's dealings with both judges were in their judicial capacities as they presided over his criminal assault case. The actions he complains of involve ruling on motions, ordering detention or release, handling evidence and witness testimony at trial. These are judicial acts normally performed by judges. Moreover, these acts fall within the scope of the judges' jurisdiction as Carlton County District Court judges. The district court has general jurisdiction over all types of criminal cases, including the assault prosecution of Larson.

Larson's retaliation claim also falls within the scope of judicial immunity because the retaliatory acts he complains of involve judicial acts regarding the continuation of the assault prosecution against him and the denial of his motion to dismiss the criminal complaint. Larson alleges the reason the judges did not rule in his favor on various motions and allowed the prosecution to continue was retaliation for his filing of a federal civil rights lawsuit regarding conditions at the Carlton County Jail. However, Larson's assertion of a retaliatory motive is a bare allegation unsupported by specific facts sufficient to plead a cause of action for retaliation and, more fundamentally, does not overcome judicial immunity, as noted above.[10]

---

[10] Even apart from judicial immunity, Larson's retaliation claim is particularly implausible as to Judge Macauley who initially presided over his criminal assault case. Larson filed his federal lawsuit on July 24, 2017 (over two months after the incident, the criminal assault complaint, and the bail hearing and detention order). Judge Macauley recused himself from Larson's criminal assault case the next day and thus took no further action in the case after that date. *See* Compl. Sec. II ¶¶ 1, 18-19, 22-25; Tabbert Aff. Ex. D (July 25, 2017 recusal order), Docket No. 24-1 at 14.

Accordingly, the Court recommends that all federal claims against Judges Macauley and Floerke be dismissed on the basis of judicial immunity.

### D.    MSOP Security Counselors

The security counselor defendants are Madsen, Zuk, Randa, Giannini, Carman, Herring, and Marczak. Larson asserts §§ 1985(2) and (3) and 1986 claims against these seven individuals alleging they and all the other Defendants engaged in a conspiracy to deprive him of equal protection of the laws. (Claims K, L). He also alleges state law claims M, N, and O.

Federal law provides individuals who testify at trial with absolute immunity from any claim based on their testimony. *Rehberg v. Paulk,* 566 U.S. 356, 367 (2012). This immunity extends to claims that witnesses conspired to present such testimony. *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992) (per curiam) (affirming dismissal of conspiracy claims on the ground of absolute witness immunity). Thus, the Court recommends that Larson's Claims K and L alleging conspiracy under §§ 1985 and 1986 be dismissed to the extent those claims are based on Defendants' trial testimony.

Larson's only factual allegations against Randa, Carman, Herring, and Marczak are based on their testimony. *See* Compl. Sec. II ¶¶ 49, 50. Therefore, the Court recommends dismissal of the §§ 1985 and 1986 conspiracy claims against these four Defendants based on witness immunity.

Larson's factual allegations against Madsen, Zuk, and Giannini are not limited to claims based on their testimony. However, his claims under §§ 1985 and 1986 alleging that Madsen, Zuk, and Giannini and all the other Defendants engaged in a conspiracy to deprive him of equal protection of the laws fail for the reasons discussed above with respect to the Moose Lake Defendants.

The Court recommends that all federal claims against Madsen, Zuk, Randa, Giannini, Carman, Herring, and Marczak be dismissed.

### E.    Canilla and Rosen

Canilla is an MSOP Group Supervisor and Rosen is a State Program Administrative Supervisor. Larson asserts §§ 1985(2) and (3) and 1986 claims against Canilla and Rosen alleging they and all the other Defendants engaged in a conspiracy (Claims K, L). He also alleges state law claims M, N, and O.

Larson's only factual allegation against Canilla is based on her trial testimony. *See* Compl. Sec. II ¶¶ 49, 50. This claim is barred by absolute witness immunity, as discussed above with respect to the MSOP security counselors' testimony. Thus, the Court recommends that Larson's Claims K and L against Canilla alleging conspiracy under §§ 1985(2) and (3) and 1986 be dismissed on that basis. Those claims also fail for the reasons discussed above with respect to the Moose Lake Defendants.

The only factual allegation about Rosen is that, in connection with Larson's requests to the Carlton County District Court to be released on his own recognizance because he already resides in a secure facility, "Rosen, via email and/or telephone conversations with defendant Berglund (and/or defendants Ranallo and Boucher), stated plaintiff was too dangerous to be returned to MSOP." *Id.* ¶ 26. Even accepting the allegation as true for purposes of the present motion to dismiss, the Court finds this single allegation insufficient to support an inference that Rosen participated in a conspiracy among the Defendants. Regardless of this particular factual allegation, however, Larson's §§ 1985 and 1986 conspiracy claims fail for the reasons discussed above with respect to the Moose Lake Defendants. The Court recommends dismissal of the federal claims against Rosen.

## VI.    State Law Claims

Because the Court recommends granting Defendants' motions to dismiss all of the federal claims pleaded in Larson's complaint, the Court likewise recommends that the Court decline to exercise supplemental jurisdiction over the state law claims.

## VII.    Larson's Motions to Strike Statements

Larson filed two Motions to Strike statements from the Joint Answer of the Carlson County Defendants [Docket No. 43] and the Joint Answer of the Moose Lake Defendants [Docket No. 36]. Here, the Court has recommended that Larson's claims against those Defendants be dismissed. If the recommendation is adopted and the claims are ultimately dismissed, Larson's motions will be moot. Accordingly, at this time the Court denies Larson's motions.

## ORDER

IT IS HEREBY ORDERED that Larson's Motions to Strike [Docket Nos 36, 43] are DENIED.

## RECOMMENDATION

IT IS HEREBY RECOMMENDED that:

1.    The State Defendants' Motion to Dismiss [Docket No. 20] be GRANTED as to all federal claims, the federal claims be dismissed with prejudice, and the state law claims be dismissed without prejudice;

2.    The Carlton County Defendants' Motion to Dismiss on the Pleadings and/or Summary Judgment [Docket No. 52] be GRANTED as to all federal claims, the federal claims be dismissed with prejudice, and the state law claims be dismissed without prejudice; and

3.      That the Moose Lake Defendants' Motion for Judgment on the Pleadings [Docket No. 56] be GRANTED as to all federal claims, the federal claims be dismissed with prejudice, and the state law claims be dismissed without prejudice.

Dated: July 30, 2019                          s/David T. Schultz        _
                                              DAVID T. SCHULTZ
                                            United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).